UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ABIRA MEDICAL LABORATORIES, LLC,

      Plaintiff,

vs.

CARESOURCE, *et al*.,

      Defendants.

Case No. 3:24-cv-157

District Judge Michael J. Newman

---

**ORDER AND ENTRY: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 37); AND (2) NOTING THE MOTION FOR AN ORDER TO SHOW CAUSE AND FOR SANCTIONS REMAINS PENDING (Doc. No. 64)**

---

This civil diversity case is brought by Plaintiff Abira Medical Laboratories, LLC,[1] a citizen of New Jersey, against Defendant CareSource,[2] a citizen of Ohio, for breach of contract with alleged damages in excess of $75,000. Plaintiff alleges that Defendants breached the parties' contract by not paying Plaintiff for medical services rendered to some of Defendant's insureds.[3] Doc. No. 11 at PageID 63.

---

[1] Plaintiff does business as Genesis Diagnostics and is sometimes referred to as "Genesis Diagnostics" or "Genesis" in the evidence referenced. *See* Doc. No. 11 at PageID 63.

[2] Plaintiff also named as Defendants ABC Companies 1-100 and John Does 1-100 but did not explain their potential identities or involvement in its operative, amended complaint. *See* Doc. No. 11. As such, when the Court hereafter uses "Defendant," it is to refer solely to Defendant CareSource. When the Court references "Defendants," it refers to CareSource, ABC Companies and John Does.

[3] Plaintiff has brought similar suits against many health insurance companies and in various jurisdictions across the country. *See, e.g.*, *Abira Med. Labs., LLC v. York Ins. Servs. Grp.*, No. 23-03525, 2024 WL 2746101, at *1 (D.N.J. May 29, 2024) ("This is one of more than forty cases that Plaintiff…has filed in the United States District Court for the District of New Jersey…since June 2023"); Doc. No. 48-1 at PageID 460 (Plaintiff's corporate representative testifying that Abira has filed "at least 20 plus" cases "where Abira is suing other insurance companies that haven't paid"). Many of these cases have resulted in dismissal. *See, e.g.*, *Abira Med. Labs., LLC v. Zurich Am. Ins. Co.*, No. 23-03891, 2024 WL 2746102 (D.N.J. May 29, 2024) (granting Defendant's motion to dismiss).

On August 27, 2025, Defendant filed a motion for sanctions, to which Plaintiff responded. Doc. Nos. 29, 30. Defendant replied. Doc. No. 31. Thereafter, the undersigned referred the motion to Magistrate Judge Peter B. Silvain, Jr., as the motion was related to Plaintiff's alleged disobedience of Judge Silvain's discovery-related orders. Doc. No. 40. Judge Silvain issued a Report and Recommendation ("R&R") to grant the motion in part and deny it in part. Doc. No. 47. The Court then adopted the well-reasoned R&R and subsequently issued an order ordering Plaintiff to pay Defendant within 30 days, which closed on May 10, 2026. Doc. Nos. 55, 63. Additionally, Defendant filed a motion for an order to show cause and for sanctions against Plaintiff, to which Plaintiff responded. Doc. Nos. 64, 65. Defendant replied. Doc. No. 66. Finally, the parties went to mediation on January 28, 2026, and the mediator reported that the case was at an impasse. Doc. No. 44.

The current issue before the Court is Defendant CareSource's motion for summary judgment. Doc. No. 37. The motion was brought against all remaining claims pled by Plaintiff: breach of contract, breach of duty of good faith and fair dealing, and quantum meruit/unjust enrichment. Doc. No. 37 at PageID 304. Plaintiff responded (Doc. No. 52), and Defendant replied (Doc. No. 53). Thus, the motion is now ripe for decision.

### I. Undisputed Facts

The following factual discussion rests upon the evidence submitted in support of Defendant's motion for summary judgment. The Court views the evidence in the light most favorable to Plaintiff, the non-moving party. *See Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007). The Court has reviewed all evidence submitted, including: (1) one deposition—Alan Miller's Fed. R. Civ. P. 30(b)(6) deposition—on behalf of Plaintiff (Doc. No. 48-1); (2) Plaintiff's in-house counsel's sworn declaration and attachment of Defendant's initial

2

disclosures (Doc. No. 52-1 at PageID 842-42; Doc. No. 52-2 at PageID 844-47); (3) Miller's post-deposition affidavit; and (4) all exhibits to Miller's affidavit (Doc. Nos. 58, 59, 60). *See* Doc. No. 52-3. All-in-all, there was relatively little evidence for the Court to consider in ruling on the motion for summary judgment because Plaintiff never served discovery requests on Defendant. Doc. No. 53 at PageID 857; *see* Fed. R. Civ. P. 56.

Plaintiff is a medical care and services provider. [4] Doc. No. 48-1 at PageID 448. Defendant is a health insurance company. *Id.* Plaintiff routinely performed clinical laboratory, pharmacy, toxicology, genetics, addiction, rehabilitation, and COVID-19 testing services for Defendant's insureds. *Id.* at PageID 461. Insureds, as well as physician members and non-members, submitted formal requests for payment following the rendering of certain medical services. The parties refer to these requests as "requisitions." *Id.* at PageID 509. Plaintiff claims that Defendant's insureds assigned their benefits to Plaintiff by executing the requisitions. *Id.* at PageID 510. This appears to be the typical mechanism through which Plaintiff received payment for its services. *Id*.

Plaintiff performed laboratory work for some of Defendant's insureds from 2016 through 2021. *Id.* at PageID 464. Plaintiff alleges that it routinely submitted claims for such laboratory work to Defendant for payment and that Defendant has underpaid or refused to pay a portion of the claims submitted. *Id.* at PageID 481. Plaintiff seeks actual damages of $665,518.00, as well as punitive damages, interest, and costs of the suit. Doc. No. 11 at PageID 63.

## II.  Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

---

[4] Plaintiff is now in research and development, as its laboratory testing operations ceased following an FBI raid on its facilities in 2021 and its license to operate a laboratory testing business was suspended. Doc. No. 48-1 at PageID 463-67.

to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the summary judgment stage, the burden is first on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations or admissions, interrogatory answers, or other materials," or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B) (citation modified).  Once the moving party accomplishes this, "the non-moving party may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citation modified).  Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Further, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations modified).  Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys,

not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

Finally, for multi-element claims, the moving party's burden is to show "the absence of a genuine issue of material fact as to at least one essential element" of the claim. *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010). The non-moving party must then establish "specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)).

## III. Discussion

### A. Breach-of-Contract and Breach of Duty of Good Faith and Fair Dealing Claims

To establish a breach-of-contract claim under Ohio law, a party must establish "'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, 46 F.4th 514, 520 (6th Cir. 2022) (citing Ohio law). "'The role of courts in examining contracts is to ascertain the intent of the parties.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007)). "'The intent of the parties is presumed to reside in the language they choose to use in their agreement.'" *Id*. (quoting *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (1996)).

When a plaintiff does not set forth the alleged contract or its provisions, he fails to state a breach-of-contract claim. *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.,* 492 F. App'x 518, 522 (6th Cir. 2012). Additionally, claims for payment relating to medical services under an insurance contract are "determined on an insured-by-insured basis, and subject to considerations

5

of what may or may not be payable under any particular benefit plan[.]" *Specialty Med. Equip., Inc. v. UnitedHealth Grp., Inc.*, No. 22-CV-12396, 2023 WL 143940, at *7 (E.D. Mich. Jan. 10, 2023) (discussing Michigan law); *see Abira Med. Labs., LLC v. UPMC Health Plan Inc.*, No. 24-cv-0227, 2025 WL 3068734, at *7 (E.D. Pa.  Nov. 3, 2025) (same).

"Every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, 463, 97 N.E.3d 458, 469 (2018).  Further, because a claim for breach of the implied duty of good faith and fair dealing relies on the underlying contract, it would fail without a binding contract. *Pell v. Durnell's RV Sales, Inc.*, No. 2:19-CV-2247, 2020 WL 13499488 at *9 (S.D. Ohio Mar. 24, 2020).

Under Ohio law, the same elements of a contract apply to an assignment of contractual rights, since the "assignment of contract rights is, itself, a contract." *Mid Am. Constr., LLC v. Univ. of Akron*, No. 18AP-846, 2019 WL 4667581, at *15 (Ohio Ct. App. Sept. 24, 2019).  Thus, the assignment cannot stand without the contractual elements first being met. *See id.*  If the elements of a contract are met, those contract rights may be assigned freely, absent an exception. *Blue Ash Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-CV-393, 2021 WL 916627, at *2 (S.D. Ohio Mar. 10, 2021), *aff'd,* No. 21-3365, 2021 WL 5755632 (6th Cir. Dec. 3, 2021) (citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 486, 861 N.E.2d 121, 126 (2006)).

Plaintiff alleges that Defendant's insureds had certain rights to receive benefit payments from Defendant for some medical treatment and services. *See* Doc. No. 52 at PageID 823.  The insureds' policies or health plans designated which treatment or services were covered by the policies and, pursuant to those designations, either provided or declined to provide benefits payments to insureds. *Id.*  Plaintiff alleges that when Defendant's insureds needed the medical

services Plaintiff offers, they assigned to Plaintiff their rights to receive benefit payments from

Defendant. Doc. No. 52 at PageID 829. This occurred, according to Plaintiff, through requisitions

the insureds signed, containing the following language:

- "I hereby assign all rights and benefits under my health plan and direct payments to be made to Genesis Diagnostics or its assigned affiliates for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoints Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request disclosure appeal litigation or other remedies in accordance with the benefits and rights under my health plan in accordance with any federal or state laws." Doc. No. 59-1 at PageID 1001, 1003, 1005, 1009, 1012, 1014, 1016, 1017, 1019, 1021, 1022, 1027, 1031, 1033, 1037, 1040, 1043, 1047, 1051, 1054.

- "I hereby authorize my insurance benefits to be paid directly to Genesis for services I received." *Id.* at PageID 923, 925, 927, 930, 933, 936, 937, 939, 941, 943, 945, 947, 950, 953, 957, 986.

- "I hereby authorize my insurance benefits to be paid directly to Genesis Diagnostics and authorize them to release medical information concerning my testing to my insurers. If applicable, I authorize Genesis to be my Designated Representative for purposes of appealing any denial of benefits." *Id.* at PageID 924, 989-93.

- "I request that payment of any third party payer benefits be paid on my behalf to Genesis for services furnished to me by Genesis. I authorize Genesis to release to its agents and/or other third party payers any information needed to determine these benefits payable for related services." *Id.* at PageID 964, 967, 969, 971, 974, 976, 978, 980, 982, 987, 997, 1000, 1008, 1015, 1026.

The language in these requisitions demonstrates these insureds intended to assign their

rights to Plaintiff to receive benefit payments that may have been due under the terms of their

medical insurance or health plans with Defendant. *See Savedoff*, 524 F.3d at 763 ("'The intent of

the parties is presumed to reside in the language they choose to use in their agreement.'") (quoting

*Graham,* 667 N.E.2d at 952). Defendant also does not cite to any anti-assignment language or

conditions.  *See Blue Ash Auto Body, Inc.*, 2021 WL 916627, at *2.  Although these conclusions support Plaintiff's breach claims, Plaintiff has not shown what benefits were assigned, if any. Plaintiff has not identified any specific language from any of the identified insureds' insurance plans to confirm an insured would have been entitled, prior to any assignment, to a benefit payment for the services Plaintiff provided.  Instead, the record shows Plaintiff lacks such information.  *See* Doc. No. 48-1 at PageID 453 (deposition of Plaintiff's corporate representative, during which he testified, "I didn't review the CareSource plans"); *see* Doc. No. 52 at PageID 835 ("CareSource is correct that Plaintiff has not produce[d] a health plan").

"[T]he question of whether any particular item or service is payable is ultimately determined on an insured-by-insured basis, subject to considerations of [the insured's] particular benefit plan[.]"  *UnitedHealth Grp.*, 2023 WL 143940, at *7.  Given this, to survive summary judgment, Plaintiff needs to identify particular insureds and their insurance plans to show Defendant's alleged non-payment of benefits it had assigned to Plaintiff constituted a contract breach.  Plaintiff has not done so.  *See id.;cf. Abira Med. Labs., LLC,*  2025 WL 3068734, at *7 ( "[A] reasonable jury could not find that the parties formed 'an implied contract broadly requiring Defendants to pay Plaintiff, on a prompt basis, for all services provided to various insureds, pursuant to the terms of varying benefit plans,' based on one freestanding certificate of coverage" (citation modified)).  Even assuming, *arguendo*, Defendant's insureds' contractual rights were assigned to Plaintiff through language in the requisitions, the insurance plans still may have designated no benefit payment for the specific service(s) Plaintiff rendered to any given insured, resulting in denial of any claims. *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F. 4th 403, 409 (6th Cir. 2025) ("[Section] 18022 tells insurers *what types* of care they must include in members' plans, but not how much they must pay providers") (emphasis in original).  Given this contingency, and without

evidence of one or more specific breaches, Plaintiff's breach-of-contract claim fails. *See Anderson*, 477 U.S. at 248.

### B. Implied Contract

An implied contract is created based upon a meeting of the minds that is inferred from the circumstances and the conduct of the parties. *United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 920 (6th Cir. 2002) (discussing Ohio law). "Implied in fact contracts usually occur when a party provides another party with services or materials under circumstances where a payment typically is made for the services or materials." *Id.* at 919 (citing *Lucas v. Costantini,* 13 Ohio App.3d 367, 369, 469 N.E.2d 927 (1983)).

Plaintiff also asserts that the parties formed an implied contract through their conduct and, therefore, even if there is no explicit contract between the parties, a contract nonetheless exists. Doc. No. 52 at PageID 836-37; *see* Doc. No. 48-1 at PageID 461 ("I mean, we've gotten paid from CareSource in the past"). Plaintiff points to a list of electronic health care claims that Plaintiff submitted to Defendant. Doc. No. 58-1 at PageID 914-15. Defendant responded to Plaintiff's claims requests with electronic remittance and made payments for some claims. Doc. Nos. 58-1, 58-2. Viewing this evidence in the light most favorable[5] to Plaintiff as the non-moving party, Plaintiff does not provide any evidence of particular insureds' plans to demonstrate that those alleged insureds' plans would result in payment to Plaintiff. Without such evidence to demonstrate one or more breaches, Plaintiff's implied contract theory cannot be substantiated. *Cf. Specialty Med. Equip., Inc. v. UnitedHealth Grp., Inc.*, No. 22-CV-12396, 2023 WL 143940, at *7 (E.D. Mich. Jan. 10, 2023) ("Because the question of whether any particular item or service is payable

---

[5] The Court notes that Plaintiff's corporate representative, Alan Miller, stated in his deposition that Plaintiff did not submit many claims, and he did not know which claims had been submitted from approximately 2016 to 2019. Doc. No. 48-1 at PageID 569.

is ultimately determined on an insured-by-insured basis, subject to considerations of what may or may not be payable under any particular benefit plan, the Court will not find an implied contract broadly requiring Defendants to pay Plaintiff, on a prompt basis, for all DMA [durable medical equipment] provided to various insureds, pursuant to the terms of varying benefit plans, based solely on the fact that Defendants have, in the past, paid unrelated claims for DME to presumably other insureds, covered by different benefit plans").  Since the record lacks evidence from which a reasonable jury could find in favor of Plaintiff as to the first element of a contract claim—that a binding contract exists—summary judgment is warranted on Plaintiff's implied contract theory. *Cf. Abira Med. Labs., LLC,* 2025 WL 3068734, at *7.

### C.  Quantum Meruit and Unjust Enrichment Claims

A quantum meruit claim is essentially an equitable claim of unjust enrichment.  *See Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, No. 4:08-CV-2830, 2010 WL 395212, at *7 (N.D. Ohio Jan. 22, 2010) (merging unjust enrichment and quantum meruit claims).  To establish an unjust enrichment claim, a plaintiff must show (1) that it conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be inequitable for the defendant to retain the benefit without payment for the value.  *Cook v. Ohio Natl. Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020).  Additionally, benefits conferred upon an insured are not considered benefits conferred upon the insurer.  *Blue Ash Auto Body, Inc.*, 2021 WL 916627, at *4.

Defendant attempts to strengthen its unjust enrichment argument by submitting an affidavit (Doc. No. 52-3 at PageID 849-52) and two exhibits[6] (Doc. Nos. 58-1, 58-2) by corporate representative Alan Miller, who also previously testified via deposition (Doc. No. 48-1).  Plaintiff claims that this supplemental evidence shows Defendant had knowledge of the benefits being

---

[6] These two exhibits allegedly reflect a spreadsheet showing electronic transactions between the parties and Defendant's additional paid data.  Doc. Nos. 58-1, 58-2.

conferred.  Doc. No. 52 at PageID 839 ("CareSource has knowledge of the benefit as it paid certain claims").  Plaintiff, however, argues the sham affidavit rule applies, and as a result, the affidavit and its exhibits should be disregarded.  Doc. No. 53 at PageID 859; *see Werner v. Young*, No. 22-5197, 2023 WL 639103, at *7 (6th Cir. Jan. 27, 2023) ("The sham affidavit rule prohibits a party from filing a post-deposition affidavit that 'directly contradicts the nonmoving party's prior sworn testimony.'").

Mr. Miller testified on behalf of Defendant that he was not sure if Exhibit 2, the spreadsheet, reflected information from Defendant or a separate entity.  Doc. No. 48-1 at PageID 532 ("that's information given back either from Change Healthcare or CareSource").  In his affidavit, Mr. Miller states, "Attached hereto as Exhibit 2 is a copy of the ADC X12N 835 electronic remittance advice, reflecting transactions between the parties." Doc. No. 52-3 at PageID 851.  While Plaintiff argues this is a sham affidavit because of Mr. Miller's deposition testimony, the Court finds that this is not a sham affidavit.  Rather, the affidavit adds additional context to Mr. Miller's testimony; it does not "directly contradict" his prior sworn testimony.  *See Werner*, 2023 WL 639103, at *7.

In this case, though, the record lacks evidence that Defendants benefited in any way by not paying Plaintiff's claims.  Thus, even if Defendant, as an insurer, had knowledge of the benefits being conferred, as Plaintiff argues, Defendant was not actually conferred any benefits, as a matter of law, for those benefits conferred upon its insureds.  *See Blue Ash Auto Body, Inc.*, 2021 WL 916627, at *4.  Thus, a reasonable jury could not find in Plaintiff's favor as to its quantum meruit/unjust enrichment claim, so summary judgement is **GRANTED**.

## IV.  Conclusion

For the reasons stated herein, Defendant's motion for summary judgment is **GRANTED**.

Additionally, the Court **NOTES** the motion for an order to show cause and for sanctions remains pending.

       **IT IS SO ORDERED.**

  June 16, 2026                                 s/*Michael J. Newman*
                                               Hon. Michael J. Newman
                                               United States District Judge